IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

_____

| | |
|---|---|
| IN RE CONAGRA FOODS, INC. ) | |
| DERIVATIVE LITIGATION ) | |
| _____) | |
| SHAWN VAN HEES, Derivatively ) | |
| on behalf of CONAGRA FOODS, ) | |
| INC., ) | |
| ) | |
| Plaintiff, ) | 8:05CV342 |
| ) | |
| v. ) | |
| ) | |
| JAMES P. O'DONNELL, BRUCE ) | |
| ROHDE, FRANK S. SKLARSKY, ) | |
| MOGENS C. BAY, STEPHEN G. ) | |
| BUTLER, ALICE B. HAYES, W.G. ) | |
| JURGENSEN, CARL E. REICHARDT, ) | |
| DAVID H. BATCHELDER, HOWARD G. ) | |
| BUFFETT, MARK H. RAUENHORST, ) | |
| JOHN T. CHAIN, JR., RONALD W. ) | |
| ROSKENS, KENNETH E. STINSON, ) | |
| STEVEN F. GOLDSTONE and ) | |
| ROBERT KRANE, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| and ) | |
| ) | |
| CONAGRA FOODS, INC., A ) | |
| Delaware corporation, ) | |
| ) | |
| Nominal Defendant. ) | |
| _____) | |
| GERALD HALPERN, Derivatively ) | |
| on behalf of CONAGRA FOODS, ) | |
| INC., ) | |
| ) | |
| Plaintiff, ) | 8:05CV343 |
| ) | |
| v. ) | |
| ) | |
| JAMES P. O'DONNELL, BRUCE ) | |
| ROHDE, FRANK S. SKLARSKY, ) | |
| MOGENS C. BAY, STEPHEN G. ) | |
| BUTLER, ALICE B. HAYES, W.G. ) | |
| JURGENSEN, CARL E. REICHARDT, ) | |

```
DAVID H. BATCHELDER, HOWARD G.)
BUFFETT, MARK H. RAUENHORST,  )
JOHN T. CHAIN, JR., RONALD W. )
ROSKENS, KENNETH E. STINSON,  )
STEVEN F. GOLDSTONE and       )
ROBERT KRANE,                 )
                              )
            Defendants.       )
                              )
         and                  )
                              )
CONAGRA FOODS, INC., A        )
Delaware corporation,         )
                              )
         Nominal Defendant.   )
_____)
CHARLES ZIMMERMAN,            )
Derivatively on behalf of     )
CONAGRA FOODS, INC.,          )
                              )
            Plaintiff,        )        4:05CV3183
                              )
         v.                   )
                              )
JAMES P. O'DONNELL, BRUCE     )        MEMORANDUM OPINION
ROHDE, FRANK S. SKLARSKY,     )
MOGENS C. BAY, STEPHEN G.     )
BUTLER, ALICE B. HAYES, W.G.  )
JURGENSEN, CARL E. REICHARDT, )
DAVID H. BATCHELDER, HOWARD G.)
BUFFETT, MARK H. RAUENHORST,  )
JOHN T. CHAIN, JR., RONALD W. )
ROSKENS, KENNETH E. STINSON,  )
STEVEN F. GOLDSTONE and       )
ROBERT KRANE,                 )
                              )
            Defendants.       )
                              )
         and                  )
                              )
CONAGRA FOODS, INC., A        )
Delaware corporation,         )
                              )
         Nominal Defendant.   )
_____)
```

-2-

This matter is before the Court on defendants' motions to dismiss (Filing Nos. 55 and 61 in 8:05CV342; Filing Nos. 53 and 58 in 8:05CV343; Filing Nos. 47 and 52 in 4:05CV3183). The Court has reviewed the motions, the briefs in support and opposition and the applicable law and finds that defendants' motions to dismiss shall be granted because plaintiffs did not make the requisite demand upon the board of directors prior to filing this action and did not adequately plead the specific facts necessary to establish that demand would have been futile.

## I.  BACKGROUND

This is a shareholder derivative action which is brought in the right of and for the benefit of ConAgra Foods, Inc. ("ConAgra") against certain officers and directors seeking to remedy defendants' alleged violations of state law including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and violations of the Sarbanes-Oxley Act of 2002 that occurred between September 2003 and the present (Consolidated Complaint ("CC"), ¶ 1). The defendants are ConAgra; named individual members of the ConAgra board of directors, David Batchelder, Mogens Bay, Howard G. Buffett, Stephen G. Butler, John T. Chain, Steven F. Goldstone, Alice B. Hayes, W.G. Jurgensen, Mark H. Rauenhorst, Carl E. Reichardt, Ronald W. Roskins and Kenneth E. Stinson; Robert Krane, a past board member who served on the

-3-

board until September, 2004; board member and former President and Chief Executive Officer Bruce C. Rohde ("Rohde"); present corporate officer Frank Sklarsky; and past corporate officer James P. O'Donnell.

Plaintiffs' complaint alleges that ConAgra's earnings were overstated from 2002 through 2005 because ConAgra erred in 1997 in calculating its tax basis in its pork subsidiary and in calculating its foreign income tax obligations and foreign tax credits. The improper calculation of the tax basis for the pork subsidiary resulted in improper calculations of capital losses from the subsequent sale, losses which were used to shelter subsequent capital gains and which thereby reduced tax liabilities during the class period (CC, ¶ 12).

The complaint also alleges that the defendants misled investors during the implementation of a company wide efficiency measure termed "Project Nucleus." The complaint alleges that the implementation of "Project Nucleus" resulted in ConAgra's inability to produce accurate customer invoices for a period of time and materially effected ConAgra's ability to prepare accurate financial statements and projections (CC, ¶ 20).

## II.  MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), well-pled allegations are considered to be true and are viewed in the light most favorable to the plaintiff. *Riley*

-4-

*v. St. Louis County*, 153 F.3d 627, 629 (8th Cir. 1998); *Carney v. Houston*, 33 F.3d 893, 894 (8th Cir. 1994). The issue in resolving a motion to dismiss is whether plaintiffs are entitled to offer evidence in support of their claim, not whether they will ultimately prevail. *United States v. Aceto Chems. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989). In viewing the facts in the light most favorable to the plaintiff, the Court must determine whether the complaint states any valid claim for relief. *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070 (1979). The Court considers the defendants' motion in light of the foregoing standard.

Where plaintiffs have pled demand futility, they must meet a heightened pleading standard. The burden to meet the demand futility test is a heavy one requiring the pleading of facts with particularity and represents "a marked departure from the 'notice' pleading philosophy." *Levine v. Smith*, 591 A.2d 194, 211 (Del. 1991).

**Demand Futility**

In a derivative suit, an individual shareholder seeks to enforce a right that belongs to the corporation. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). However, given "the basic principle of corporate governance that the decisions of a corporation -- including the decision to initiate litigation -- should be made by the board of directors or the majority of

-5-

shareholders," most jurisdictions, including Delaware, require a pre-suit demand be made of the corporation's board of directors. *Kamen*, 500 U.S. at 96. This allows the directors to exercise their business judgment and determine whether litigation is in the best interest of the corporation. *Id*.

Rule 23.1 requires a plaintiff "to allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." However, the requirement of a demand is more than a pleading requirement; it is a substantive right of the shareholder and the directors. *Kamen*, 500 U.S. at 97. Here, plaintiffs acknowledge that they never made demand upon the ConAgra board or upon ConAgra shareholders, but instead allege that demand should be excused because making such a demand would be an exercise in futility (CC, ¶ 171).

The "futility" exception establishes the circumstances in which the shareholder is allowed to circumvent the directors' authority to manage corporate affairs. *Kamen,* 500 U.S. at 102. Because ConAgra was incorporated under the laws of Delaware, Delaware law applies in determining whether a demand may be excused when shareholders file a derivative complaint on behalf of the company. *Kamen*, 500 U.S. at 98-99. As a prerequisite to a derivative action, Delaware law requires that a demand be made

unless the demand is excused because the request would be futile. *Rales v. Blausband*, 634 A.2d 927, 932 (Del. 1993); *Aronson v. Lewis*, 473 A.2d 805, 811-812 (Del. 1984). Under Delaware law, demand futility must be "gauged by the circumstances existing at the time of the [the filing of the] derivative suit." *Aronson*, 473 A.2d at 810.

1. *Rales* test

The appropriate test for demand futility is found in *Rales*. In *Rales*, the Delaware Supreme Court was asked to determine whether the plaintiffs had alleged facts sufficient to show that demand on a board of directors was excused, accepting the well-pleaded factual allegations of the derivative complaint as true when based on a motion of dismissal. *Rales*, 634 A.2d at 931. The *Rales* test involves a singular inquiry into:

> Whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations. Thus, a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

*Id.* at 934.   Thus, the *Rales* inquiry concentrates on determining whether a majority of the board that is not alleged to have participated directly in or even approved of wrongdoing can act independently of any interested manager-directors.   *Guttman v. Huang*, 823 A.2d 492, 501 (Del. 2003).   Therefore, the Court must decide whether a majority of the ConAgra board in place at the time of this suit could impartially consider a demand.

   This analysis requires that the Court first determine if any directors are deemed interested, and if so, whether any of the board's other members are thereby compromised in their ability to act independently of the directors deemed to be interested.   *Guttman*, 823 A.2d at 501-02.   If a majority of the board is found to be impartial under this analysis, then the Court must next consider "whether the complaint sets forth particularized facts that plead a non-exculpated claim of breach of fiduciary duty against a majority of the board, thereby stripping away their first-blush veneer of impartiality."   *Id.* at 502.

   A.   Are Any Directors Interested?

   ConAgra's board is comprised of thirteen members.   A proper analysis would focus on the board's composition at the

time the consolidated complaint is filed.[1]  *In Re: American Italian Pasta Co. Sec. Litig.*, 2006 U.S. Dist. LEXIS 40545, at *33 (W.D. Mo. June 19, 2006).  Rohde was an employee of ConAgra at the time the initial complaint was filed but retired from ConAgra in September, 2005, before the consolidated complaint was filed.  Therefore, at the time the consolidated complaint was filed, none of the defendant board members were employees of ConAgra.

Rauenhorst is a beneficial owner, director and officer of Opus which is a party to several leases with ConAgra.  While business relationships in the form of leases between Opus and ConAgra exist, the consolidated complaint is devoid of any facts to suggest anything irregular about the leases.  The facts do not allege that the leases were not negotiated on an arms-length basis or that the lease terms were not commercially reasonable. The complaint also fails to allege that Rauenhorst's relationship with Opus was so material to him that he was in fact affected or would likely be affected by the alleged self-interest.  *Cinerama Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1151 (Del. Ch. 1994) *aff'd*, 663 A.2d 1156, 1167 (Del. 1995).

---

[1]  Mr. Krane's status and involvement is irrelevant for purposes of demand futility because he left the board in September, 2004, prior to the filing of either the original complaints or the subsequent consolidated complaint.

Even if Rohde and Rauenhorst are deemed to be interested, plaintiffs still have the burden of showing in a particularized pleading that at least five other board members are also interested (a majority). Plaintiffs fail to make this requisite showing.

The pleadings allege that because some board members have served with Rohde on other corporate and non-profit boards, this joint service is sufficient to render these other directors disinterested. Specifically, the pleadings allege that Stinson and Bay served with Rohde on the boards of Valmont Corporation and Creighton University. Plaintiffs contend that business and personal relationships between the board members, like that between Stinson, Bay and Rohde, would preclude them from taking action against each other. However, these relationships are not atypical in the world of corporate governance, and to place much weight on this contention would allow futility to become the norm instead of the exception. *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050-51 (Del. 2004). Allegations that Rohde, Stinson and Bay moved in the same business and social circles is insufficient, without more, to rebut the presumption of independence. *See Beam v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004). Therefore, Stinson and Bay do not qualify as interested directors under the *Rales* analysis.

For a majority of the board, the only allegations of interestedness are based upon the individual board members service as members of either the audit[2] or human resources[3] committees.  Membership on these committees, without more, does not support an assertion that these members are unable to impartially consider a demand.

Allegations of interestedness as to other board members are even more tenuous.  Many of the allegations fail to even allege any relationship with Rohde and Rauenhorst, the only board members who are arguably shown to be interested under *Rales*.  For example, plaintiffs go so far as to assert that the fact that Buffett's father invested in Wells Fargo Bank in the early 1990s, when Reichardt was the chairman, and publicly praised Reichardt, is sufficient to render Howard Buffett and Reichardt both interested.  Plaintiffs are mistaken.  "To create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that because of the nature of a relationship or additional circumstances . . . [that] the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested

---

[2]  Audit committee members were Bay, Butler, Jurgensen and Stinson.  For Butler and Jurgensen the oversight done as members of the audit committee is the only alleged wrongdoing.

[3]  Human resources committee members were Batchelder, Chain, Goldstone, Reichardt and Roskins.  For Batchelder, Chain, Goldstone and Roskins, the oversight done as members of the human resources committee is the only alleged wrongdoing.

director." *Beam*, 845 A.2d at 1052 (*citing* Michael P. Dooley & E. Norman Veasey, *The Role of the Board in Derivative Litigation: Delaware Law and the Current ALI Proposals Compared*, 44 Bus. Law. 503, 535 (1989).

Having considered the particularized facts alleged in the pleadings, it is apparent that the plaintiffs have not pled sufficient facts with particularity to support an allegation that a majority of the board is interested. Therefore, demand is not excused under this prong of *Rales*.

B.   Does Complaint Set Forth Particularized Facts That Plead a *Caremark* Claim

Under *Rales*, it is possible for demand to be excused, even if a majority of the board of directors is found to be disinterested. Such a claim is termed a *Caremark* claim. *See In re Caremark Int'l Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996) A *Caremark* claim has been termed, "the most difficult theory in corporate law upon which a plaintiff can hope to win a judgment." *Caremark*, 698 A.2d at 967.

What the *Rales* court acknowledged is that sometimes what is being challenged is not board action, but board *inaction*. *Caremark*, 698 A.2d at 967 (liability to the corporation for a loss may be said to arise from an unconsidered failure of the board to act in circumstances in which due attention would, arguably, have prevented the loss). The *Caremark* court labels this approach as "unconsidered" failure to act. *Id*. at 971.

-12-

To plead with particularity a substantial likelihood of director liability, in a case alleging a failure to supervise, a plaintiff must allege the specifics of which directors had knowledge, what they knew, as well as when and how they knew it. *See In re Baxter Int'l, Inc.*, 654 A.2d 1268, 1271 (Del. Ch. 1995)(refusing to excuse pre-suit demand where "the complaint does not include anything specific about the alleged scheme [simply] suggesting that the directors must have known it.").

The *Caremark* court compared the *Caremark* defendants to the defendants in *Graham v. Allis-Chalmers Mfg. Co.*, 41 Del Ch. 78, 188 A.2d 125 (Del. 1963), stating that the claim asserted in both cases was only that the directors "ought to have known" of the violations, and that the directors had no duty "to ferret out wrongdoing which [the directors] have no reason to suspect exists," particularly where "there were no grounds for suspicion . . . and the directors were blamelessly unaware of the conduct leading to the corporate liability." *Caremark,* 698 A.2d at 969 (*quoting Graham*, 188 A.2d at 130). The court noted that the true intent of a review where there is no "considered" board action is based more upon corporate governance -- whether there is a corporate information gathering and reporting system in existence. *Id.* at 969-70.

As the *Caremark* court explained, review of directors liability was "predicated upon ignorance of liability creating

-13-

activities," where there were no facts to indicate the directors
"conscientiously permitted a known violation of law by the
corporation to occur." *Id*. at 971, 972.  Here, as in *Caremark*,
plaintiffs fail to allege facts that support an inference that
the directors conscientiously permitted a known violation of law
by ConAgra.  Where there is no conflict of interest or no facts
suggesting suspect motivation, it is difficult to charge
directors with responsibility for corporate losses for an alleged
breach of care.  *Id*. at 972.  In determining the directors'
alleged breach of the duty of care, the *Caremark* court noted that
liability may arise from two possible situations -- liability for
decisions made by the directors or liability for the directors'
failure to monitor the actions of the corporation.  *Id*. at 967.

While plaintiffs allege that the human resources
committee members were responsible for Rohde's compensation
package that tied his bonuses to corporate profitability, this
does not support an inference of wrongdoing.  Paying bonuses tied
to profits is not illegal.  That the bonus paid to Rohde may have
been inflated because of an error in calculating tax liabilities
tied to the sale of a subsidiary is insufficient to support the
allegation that the human resources committee members knew, or
even could have known, that the cost basis of the pork subsidiary
was incorrectly calculated in 1997.  While the human resources
committee may have approved a bonus formula, it would not have

been responsible for doing the internal calculations necessary to apply the formula specifically to ConAgra's results; and the consolidated complaint fails to allege with particularity, specific facts to meet the requirements to adequately plead demand futility.

Plaintiffs also allege that the audit committee either had knowledge of the accounting errors that lead to the 2005 restatement or should have provided better supervision so that these accounting errors never occurred.  These allegations are also insufficient because the pleadings contain no particularized allegations that any member of the audit committee knew of the tax accounting errors or the other alleged problems.  While plaintiffs direct the Court to the Seventh Circuit decision of *In Re:  Abbott Laboratories Deriv. S'Holders Litig.*, 323 F.3d 795 (7th Cir. 2003), where the court excused demand, *Abbott* is distinguishable from the present case because, in *Abbott,* the allegations demonstrated that the directors knew about the problems at issue.  Here there are no such allegations; instead the complaint simply alleges that the directors *should have known* of accounting irregularities.

This allegation is similar to one that the court in *Guttman* dismissed.  *Guttman*, 823 A.2d at 504.  The complaint in *Guttman* alleged that board members were liable to the company for failing to prevent accounting irregularities that required the

-15-

company to restate its financial statements.  *Id*. at 493.
Specifically, the *Guttman* court noted that the complaint was
devoid of "allegations of fact detailing . . . any indication as
to why directors would have perceived the accounting
irregularities" noting that there were no "particularized
allegations of fact demonstrating that the outside directors had
actual or constructive knowledge of the accounting improprieties"
plead.  *Id*. at 496-98, 503.  Based on the *Caremark* standards, the
Guttman court dismissed the complaint because the allegations
were wholly conclusory.  *Id*. at 503.

Because plaintiffs fail to plead a single fact that
suggests that the ConAgra directors were aware of the accounting
irregularities or the problems with the Project Nucleus
implementation, plaintiffs cannot successfully claim that the
board members were aware of or should have been aware of these
problems.  These facts support the conclusion that the directors
were "blamelessly unaware of the conduct leading to the corporate
liability." *Caremark*, 698 A.2d at 969 (*quoting Graham*, 188 A.2d
at 130).  Plaintiffs have failed to meet their burden to excuse
demand.  Where demand is not excused, the Court will dismiss the

complaint.  A separate order will be entered this date in accordance with this opinion.

DATED this 27th day of September, 2006.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

-17-